TOMPKINS *v.* BUTTERFIELD and others.

*(Circuit Court, D. Massachusetts.. October 1, 1885.)*

1. PATENT—MARK ON UNPATENTED ARTICLE—PENALTY.
    Under section 4901, Rev. St., the marking of an unpatented article "patented," with intent to deceive and defraud the public, is a criminal offense, and liable to a penalty of not less than $100 for each offense.
2. CORPORATION—SUPERINTENDENT—LIABILITY FOR ACTS OF.
    A corporation is liable for the act of its superintendent in wrongfully affixing the word "patented" to an article which is unpatented.
3. SAME—KNOWLEDGE.
    If the superintendent knew, or should have known, that the articles were not covered by patent, the corporation will be liable; but if he honestly believed they were, it will not be.

At Law.

*J. C. Clayton*, for plaintiff.

*A. D. McClellan* and *P. Cummings*, for defendants.

NELSON, J., (*charging jury.*) This is an action brought by the plaintiff against the defendants to recover a penalty, under a statute of the United States, which provides that every person who in any manner marks upon or affixes upon any unpatented article the word "patented," or any word importing that the same is patented, for the purpose of deceiving the public, shall be liable for every such offense to a penalty of not less than $100 and costs.

This suit was brought originally against the Suffolk Iron Company, and three other individuals joining them as defendants. As to Mr. Butterfield, one of the original defendants, he is already disposed of by the verdict which you have rendered, under the instruction of the court, upon the plea in abatement, and the learned counsel for the plaintiff does not claim that upon the evidence in the case, and the facts proved, the plaintiff is entitled to recover against either of the other individual defendants, Mr. Drew and Mr. Burgess; and whatever your verdict may be in respect to the Suffolk Iron Company, you will return a verdict for the other two defendants. The controversy as it now stands is solely between the plaintiff and the Suffolk Iron Company.

The purpose of this statute is very plain and evident. Its purpose is to prevent the public from being deceived by persons marking upon an article, upon which no patent has ever been granted by the United States, words which purport that a patent has been granted,—the words which another provision of the statute requires shall be placed upon all patented articles; and, of course, it is of the utmost importance that the public should not be imposed upon by any person who sees fit to stamp his goods as having been secured by a patent of the United States. This statute is intended to protect both the public and honest inventors against fraud, and the meaning is so perfectly clear, the law is so eminently just, and the purpose which it is designed to accomplish so plain, that it is not necessary I should dwell longer upon that.

The statute, I say, imposes a penalty for this unlawful act, and it therefore becomes in its nature a criminal proceeding. It is not a proceeding which may be prosecuted by indictment. The statute upon which the case depends provides for its enforcement, and for a remedy against its violation; and it authorizes any person to bring a suit in his own name to enforce this penalty against any person charged with having incurred it, with a provision that one-half of the penalty shall go to the person by whom the suit is brought, and by whom the prosecution is carried on, and the other half to the United States. The purpose of the law is to provide a remedy which may be availed of by any person; but taking it for granted that those parties who are especially interested in the particular article that

may be unlawfully stamped will see that the proper action is brought to enforce the penalty, and leaving it to the public at large to enforce it in this way, of course expecting that in all probability the suits will be brought by those who are interested pecuniarily in the article in respect to which the penalty has been incurred; and in this case, as I suppose in all cases of this nature, the party suing is a person interested in the article manufactured, and who desires for some reason, to enforce the penalty against a rival manufacturer who interferes with the business of the plaintiff.

Now, another consequence flowing from this being, as I have said, in the nature of a criminal proceeding, is this: that the offense must be proved by evidence that leaves upon the minds of the jury no reasonable doubt that the penalty has been incurred. In an ordinary criminal prosecution it is not sufficient to go only so far as to establish a preponderance of the evidence in favor of the government. Every person charged with an offense is to be considered innocent unless his guilt is proved so clearly that the jury can conscientiously say that no reasonable doubt remains upon their minds as to his guilt. The term "reasonable doubt," of course, does not signify a mére skeptical condition of the mind. It does not require that the proof should be so clear that no possibility of error can exist; for if that were the case, no criminal prosecution would ever prevail. It means simply that the evidence must be so conclusive and complete that all reasonable doubt of the facts is removed from the mind. That is a rule which you will apply to this case, and you will keep it in mind through the entire case.

It appears that some time before this suit was commenced the Suffolk Iron Company sold 50 saddle-trees, on each of which was stamped the words and figures, "Patented June 9, 1874." The parties agree that this stamp is sufficient to satisfy that provision of the law which prohibits any person from putting the word "patented," or any word importing that the thing is patented, upon any article for the purpose of deceiving the public. Thus it has been admitted in this case that these 50 articles sold by the defendants were all stamped within the meaning of this statute. There is no controversy about that.

I think it may also be stated here that the plaintiff has proved, by sufficient evidence to justify you in finding a verdict in his favor, that this article is wholly unpatented unless it is covered by a patent granted to one Theobald on the date borne on this label, the ninth of June, 1874. This also is agreed to in substance by the parties. Therefore, one question to be determined is whether any one of these articles (for they are all alike) was manufactured in accordance with the specification and claim of this patent to George Theobald. I must confess that I have found some difficulty in construing this patent as a matter of law; but I have given it the best consideration that I have been able to, and I have come to the conclusion to instruct you in regard to this patent as matter of law, so that you will not have to consider

the question whether or not, upon the evidence in this case, these articles are covered by the Theobald patent. I think, upon scrutinizing this instrument carefully, that neither the ridge, the chamber or orifice, the square opening at the end of the wing or side of the tree, or the space beneath, is covered by the patent. I think neither of these is covered within the meaning of this patent. I think that it also fails in not having upon it the sockets, which are an essential part of the article described in the Theobald patent, and in not having any concave or convex surface, such as is described in the specification or claim of the letters patent.

We are fortunate in having before us a saddle-tree which the parties agree is made in accordance with the Theobald patent, and I have come to the conclusion to take the view which was taken by the learned gentleman who appeared here, Mr. Faber du Faur, as an expert for the plaintiff, and to hold that what the claim of the patent actually covers is the convex surface on the under side of the bearing portion of the tree, the depressed upper surface, which constitutes the corresponding part to the convex under surface, the air-chamber, formed by its corrugated upper surface, and the sockets by which the contrivance is attached to the saddle; and therefore you will take it for granted, in determining this case, that these 50 articles were not manufactured in conformity with this patent. If I err in this respect, the defendant has his remedy by taking the case to a higher court. That is the conclusion to which I have come upon a careful examination of this claim and specification. But that, of course, is by no means the whole of this case. Although this may be an article which is not patented within the meaning of the statute, still the defendant is not necessarily guilty of this offense. The plaintiff must go further, and prove that these marks were affixed to these articles for the purpose of deceiving the public.

Now, this suit is against a corporation which can have no purpose whatever, can have no mind or volition. The evidence is that these marks were affixed after the corporation became the proprietor of the Theobald patent, and the owner of the stock purchased of Hayes. It appears that the labels were affixed by the superintendent personally, or by persons under his direction, and that the other officers of the corporation had nothing whatever to do with it, gave no directions in regard to it, and that the act of fixing or causing these marks to be fixed was that of the superintendent. I instruct you that the corporation is responsible for the conduct of its superintendent; that as he was the person who had charge of this work, and the person who conducted the manufacturing part of the business of the corporation, his acts bound the defendant; and that the corporation is bound by the purpose of the superintendent in the performance of the acts, and by his knowledge with reference to the performance of the acts.

Now comes the question, what does the statute mean when it uses the term "for the purpose of deceiving the public?" It means the

purpose of making the public believe, by affixing a stamp or mark upon the article, that it is covered by a patent. If that was the purpose of the superintendent, with the knowledge or belief that in point of fact and law the article was not covered by a patent, then the corporation is liable to the penalty for the act of the superintendent. So it is important for you to find out from all this evidence what was the state of mind of this superintendent. There is no claim that the other officers of the corporation had any knowledge of these acts; and the suit has been discontinued as against them. It all rests upon the knowledge and purpose of Hayes, the superintendent. Now, if you think, upon all this evidence, that Mr. Hayes knew or ought to have known that these articles were not fairly within the terms of the Theobald patent, then it is your duty to find a verdict for the plaintiff; but if, on the other hand, you find from all this testimony that he honestly believed, though his belief may have been mistaken, that these articles were covered by the Theobald patent, then, although he may not have had a lawful right to have so affixed these marks, yet it cannot be said that he did it with the fraudulent and unlawful purpose which the statute makes essential to the offense; therefore you will, of course, weigh very carefully his testimony, and compare it with all the facts in the case. You have heard his own statement as to the efforts which he made to ascertain his own rights while he himself was the holder of the patent and the manufacturer of the trees, and affixed these stamps to the articles manufactured, and you have heard his testimony as to his consultation with a patent solicitor. Of course, it is important that all this should be carefully considered by you; and you are to say whether he honestly believed that the articles were fairly within the terms of the patent, and that he had a right to affix these stamps upon that ground.

Now, I think I ought to go a step further and say to you that if he affixed the stamps without knowing whether the articles were patented or not, and not having had in his mind clearly the question whether the article was within the patent or not, and without any reference to this patent or any other patent, then it was an act which, under the statute, fairly constitutes a case of criminal conduct on the part of the defendant. If he proceeded without any knowledge one way or the other to stamp the article, neither he nor the corporation can have the right to say that they had no purpose; that they never gave it a thought; that they did it under some mistaken idea of duty, —did it honestly, but without reference to any patent, and without any reference to the patent of Theobald. If they did so act, that was a case of fraud upon the public which comes within the meaning of the statute. If you find that condition of mind on the part of Hayes in reference to affixing these stamps, then you must find a verdict for the plaintiff.

The declaration contains 50 distinct counts, one upon each of the 50 articles sold by the defendant corporation. The result would be,

if you found for the plaintiff upon either one of them, you must necessarily find for him upon all, or a verdict of $5,000, one-half of which would go to the plaintiff and the other half to the United States. But the plaintiff asks for your verdict only upon three of the counts, and that you shall find the defendant guilty only as to three of the articles. If, therefore, you find for the plaintiff, you will return a verdict for $300, and not for the $5,000 which you would otherwise be obliged to return if you found on either one of the counts for the plaintiff.

I think, gentlemen, I have covered all the points which have been raised in the case. So far as my rulings are contrary to what has been requested by either party, their right of exception, of course, exists.

*Mr. Clayton.* As at present advised, the rulings are entirely satisfactory to the counsel for the plaintiff; but I will inquire, by way of greater caution, if he will have an opportunity, should it be needful, to except after he shall have seen the written charge.

*Nelson, J.* No; I think you must except now. I do not think you have the right to except at any subsequent time. Have you anything to say, Mr. Cummings?

*Mr. Cummings.* I do not care to call the attention of the court to anything further; but I should like to save the defendants' exception, supposing that there should ever be any occasion for it, as to the ruling of the court upon the construction of the Theobald patent, and likewise upon the ruling as to the liability of the corporation with respect to Mr. Hayes' acts.

*Nelson, J.* You are entitled to exceptions upon both those points.

Therefore, gentlemen, I think everything has been covered, and it only remains for you to take the case and pass upon the facts. I want to caution you in one particular. There has been a great deal of testimony here, called expert testimony,—opinions given by persons skilled in this art, who have come before you and given their opinions. Now, it is very difficult in such testimony to separate the mechanical opinion from the opinion on questions of law in a case of this kind. The law and fact are so mixed up in a case of this kind that it is very difficult to separate the opinion of the witnesses upon a mechanical question from their opinion upon a question of law. You must remember that you must take all the law from the court. You are yourselves to be the sole judges upon all questions of fact; but you are not to take any opinion upon any question of law from the mouth of the expert witness. Gentlemen, you will now retire to your room in charge of an officer of the court and consider your verdict, and when you have agreed upon it, you will notify the officer in attendance, and you will be brought into court, and your verdict will be received and recorded.